The STATE of Texas, State

v.

**Marlin Derrell YORK, Appellee.**

The State of Texas, State

v.

**Shavonia Tamika York, Appellee.**

Nos. 02–12–00050–CR, 02–12–00051–CR.

Court of Appeals of Texas, Fort Worth.

May 9, 2013.

Rehearing Overruled June 13, 2013.

Discretionary Review Refused Sept. 11, 2013.

Paul Johnson, Criminal District Attorney, Charles E. Orbison, Chief Appellate Section, Mary Miller, Assistant Criminal District, Denton, for State.

Thomas G. Pappas, Burleson, Pate & Gibson, L.L.P., Dallas, for Appellee.

PANEL: McCOY, DAUPHINOT, and MEIER, JJ.

## OPINION

PER CURIAM.

### I.  Introduction

In one issue, the State appeals the trial court's order granting the motions to suppress filed by Appellees Marlin Derrell York and Shavonia Tamika York. We reverse and remand.

### II.  Factual and Procedural Background

On August 22, 2010, Carrollton Police Officer Putman obtained a warrant, supported by a four-page affidavit, to search the Yorks' residence. Police searched the house and found cocaine, marijuana, and $2,900 in cash. The Yorks were charged with possession of a controlled substance, and each filed a motion to suppress. The

trial court held a hearing at which no witnesses were called and granted the motions. The State now brings these concurrent appeals.

### III. Suppression

The State asserts that the trial court erred by granting the motions to suppress because the affidavit supporting the search warrant provided a substantial basis for the magistrate's conclusion that there existed a fair probability that controlled substances would be found in the suspected residence. The Yorks respond that the search warrant affidavit contained nothing to provide a basis to conclude that controlled substances or contraband would be found in their residence and that it was insufficient to support a warrant.

### A. Standard of Review

■ While we normally review a trial court's ruling on a motion to suppress by using a bifurcated standard of review, under which we give almost total deference to the historical facts found by the trial court and review de novo the trial court's application of the law, when the trial court is determining probable cause to support the issuance of a search warrant, there are no credibility determinations. *State v. McLain*, 337 S.W.3d 268, 271 (Tex.Crim. App.2011). Instead, the trial court is constrained to the four corners of the affidavit. *Id.*

■ Accordingly, when reviewing a magistrate's probable cause determination, we apply the deferential standard of review articulated by the United States Supreme Court in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). *Swearingen v. State*, 143 S.W.3d 808, 811 (Tex.Crim.App.2004). Under that standard, we uphold the probable cause determination "so long as the magistrate had a 'substantial basis for ... conclud[ing]' that

a search would uncover evidence of wrongdoing." *Gates*, 462 U.S. at 236, 103 S.Ct. at 2331 (quoting *Jones v. United States*, 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960), *overruled on other grounds by United States v. Salvucci*, 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980)); *see Swearingen*, 143 S.W.3d at 810; *see also McLain*, 337 S.W.3d at 271; *Flores v. State*, 319 S.W.3d 697, 702 (Tex. Crim.App.2010). Probable cause exists when, under the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found at the specified location, and the facts stated in a search warrant affidavit "must be so closely related to the time of the issuance of the warrant that a finding of probable cause is justified." *McLain*, 337 S.W.3d at 272.

### B. Affidavit

The affidavit submitted in connection with the warrant application contains the location and a description of the premises; states that "cocaine and/or other controlled substances," illegal drug paraphernalia, money, and other items are believed to be located there in violation of the health and safety code; and identifies Marlin D. York, a thirty-three-year-old black male, as the person who controls the premises and is suspected of knowingly or intentionally possessing cocaine or other controlled substances.

The affidavit lists as facts supporting probable cause: (1) the affiant's experience as a narcotics unit investigator; (2) on June 24, 2010, police found a cell phone while searching a different residence for illegal drugs and, while the search was in progress, the cell phone "received numerous phone calls" from a residential phone number identified as Marlin's; (3) another law enforcement investigator who was conducting another drug-related investigation

told affiant that in 2009, Marlin had been connected with individuals believed to be involved in the distribution of illegal drugs; (4) the residence had the same address as Marlin had listed on his driver's license; (5) on July 21, 2010, a car registered to Marlin was seen in the residence's driveway; (6) on July 23, 2010, the search of trash bags in the trash can at the end of the residence's driveway yielded a plastic bag containing cocaine residue, a marijuana stem, and mail addressed to Marlin; on August 20, 2010, another search of trash bags yielded more mail addressed to Marlin, two large plastic bags containing cocaine residue, and multiple coffee filters containing "a white powder that field tested positive for cocaine"; and (7) on August 17, 2010, Marlin had been seen in the residence's driveway. The affiant opined that based on his experience, the plastic bags' size and the coffee filters containing cocaine residue were indicia that Marlin was a large volume cocaine dealer. The affiant also included Marlin's criminal history, which showed that he had been arrested on various occasions in Texas or Louisiana for the manufacture and delivery of a controlled substance, possession with intent to distribute cocaine, driving while intoxicated, armed robbery, and contempt of court. The warrant issued on August 22, 2010.

## C. Findings of Fact and Conclusions of Law

Although the trial court did not respond to the State's request for findings of fact and conclusions of law, the trial judge orally articulated the following six reasons for granting the Yorks' motions to suppress: (1) the two trash runs were separated too far in time from each other (twenty-eight days), with insufficient recitation to positively link them to Marlin; (2) there was no indication that the mail addressed to Marlin was found in the same bag as the items containing the cocaine residue on both trash runs; (3) there was no indication that all other reasonable means of gathering evidence were exhausted prior to obtaining a search warrant; (4) the information obtained other than through the trash runs was too attenuated; (5) the magistrate should have required that the warrant be executed in less than the three days required by statute; and (6) the fact that Marlin was observed at the residence was meaningless.[1]

## D. Analysis

A fair reading of the affidavit and the reasonable inferences that could be drawn from it initially sets out the affiant's experience in narcotics investigations and that he was investigating Marlin, whose residence since 2008 was also identified in the affidavit and who had been seen, along with a vehicle registered to him, at the residence. The affidavit's statement that a cell phone found two months earlier in a search for drugs at another location was called repeatedly from Marlin's residential phone number during the drug bust allowed an inference that the calls to that cell phone were not accidental and suggested a connection between Marlin and the drug activity at that location.

The affidavit further reflected that the two trash runs at the York residence, one occurring a month before the warrant issued and the second occurring immediately before its issuance, had yielded cocaine residue in coffee filters and plastic baggies, a marijuana stem, and mail addressed to Marlin, allowing the inference that not

---

1. The trial judge stated, "And touching on the August 17th observations, so what? They established that a Marlin York lived at that address, or was at least visiting that address on that date. It doesn't tie him to any sort of drugs, any sort of illegal activity."

only had drug activity been occurring at the residence but also that it had been continuing for some time, as well as tending to rule out the possibility that someone from another location had placed the drugs in the trash. *See Flores*, 319 S.W.3d at 703 (stating that the magistrate could have reasonably drawn an inference that marijuana residue found in a garbage can at the residence in question originated with that residence because "under the 'doctrine of chances,' it was objectively unlikely that a person or persons unconnected to the ... residence would have placed mari[j]uana in that residence's garbage can twice within a five-day period").[2] Further, Marlin had previous arrests in Texas and Louisiana for various offenses, including narcotics possession, and another officer told the affiant that in 2009, Marlin had been connected to individuals involved in large scale drug distribution.

■ Giving the appropriate weight to the magistrate's determination and the trial court's ruling, we hold that all of the foregoing indicates that there was a fair probability that controlled substances would be found at the specified address and that the magistrate had a substantial basis for concluding that probable cause existed for the warrant's issuance. *See id.*

We now address the court's articulated reasons for granting the motion to suppress. First, we disagree with the trial court's assertion made in its first and fourth oral statements that the time separation between the trash runs emasculated the findings from the initial garbage examination. Taken together, the two runs show ongoing criminal activity and virtual-ly eliminate the chance that someone else placed the drugs in the garbage bags. *See Ortiz v. State*, No. 02–03–00259–CR, 2005 WL 1994174, at *3 (Tex.App.-Fort Worth Aug. 18, 2005, pet. ref'd) (mem. op., not designated for publication) (citing *State v. Stone*, 137 S.W.3d 167, 178 (Tex.App.-Houston [1st Dist.] 2004, pet. ref'd), for the proposition that when the affidavit recites facts indicating activity of a protracted and continuous nature, the passage of time becomes less significant); *see also Flores*, 319 S.W.3d at 703; *State v. Delagarza*, 158 S.W.3d 25, 29 (Tex.App.-Austin 2005, no pet.) ("The resolution of doubtful or marginal cases should largely be determined by the preference to be accorded to warrants.").

Second, we disagree with the trial court's conclusion that because there was no indication that the mail addressed to Marlin was found in the same garbage bag as the items containing drug residue during the trash searches, there was no tie between Marlin and the drugs. Common sense yields a contrary result, particularly since the mail and drugs were found in the trash not once, but twice, and the garbage (including the drug evidence) was tied to Marlin's residence through the mail that had been discovered. *See, e.g., State v. Raymer*, 786 S.W.2d 15, 17 (Tex.App.-Dallas 1990, no pet.) (op. on reh'g) (concluding that papers tied to the appellee found with drugs during a trash search provided a direct link between the drugs in the trash and appellee's house).

Third, we disagree with the trial court's statement that there is some legal require-

---

**2.** In *Flores*, the court of criminal appeals concluded that the magistrate had a substantial basis for concluding that probable cause existed that there was at least a fair probability or substantial chance that marijuana would be found at the residence when the affiant had experience in narcotics investigations and had received an anonymous tip about narcotics activity in February 2007, and he found marijuana residue in a garbage can located directly in front of the residence in question on March 1, 2007, and March 5, 2007. 319 S.W.3d at 702–03.

ment that "all other reasonable means [be] exhausted prior to defaulting to a search warrant and [that] the [S]tate needs to take all reasonable measures short of a search warrant to gather evidence prior to defaulting to such." This is not the law and disregards the law's preference for search warrants. *See Gates,* 462 U.S. at 236, 103 S.Ct. at 2331.

Fourth, we disagree with the trial court's assumption that code of criminal procedure article 18.06's three-day requirement for execution of warrants was inapplicable. The trial court reasoned that "in this particular case, we have got something that is a commodity, that is quickly used, quickly sold, snorted, however you want to put it. It disappears quickly." This distinction is found nowhere in the statute, and the magistrate did not include any directions for a shorter period in the warrant.[3] *See* Tex.Code Crim. Proc. Ann. art. 18.06(a) (West 2005) (stating that the peace officer to whom the warrant is delivered shall execute it without delay and that it "must be executed within three days from the time of its issuance, and shall be executed within a shorter period if so directed in the warrant by the magistrate.").

Finally, we disagree with the "so what" comment that the trial judge made as to the determination that Marlin had been seen at the residence. Taken with other evidence in the affiant's possession, it demonstrated that Marlin had been seen at a location that was his residence, wherein there was a fair probability that illegal drugs would be found. Therefore, we hold that the foregoing reasoning of the trial court did not overcome the deference afforded to the magistrate's determination of

probable cause, and we sustain the State's sole issue.

## IV. Conclusion

Having sustained the State's sole issue, we reverse the trial court's orders granting the Yorks' motions to suppress and remand these cases to the trial court for further proceedings.

DAUPHINOT, J. filed a dissenting opinion.

LEE ANN DAUPHINOT, Justice.

I must respectfully dissent from the majority's thoughtful opinion because I believe that the trial court correctly suppressed the evidence and that we should uphold the decision of the trial court.

The warrant was a no-knock search warrant, not an arrest warrant or a combination search-and-arrest warrant. Essentially, the affidavit supporting the warrant

1. Correctly described the house that was clearly visible from the street;
2. Stated that the affiant believed that something illegal was located in the house in violation of the health and safety code;
3. Stated that the affiant believed that some money and other items were in the house;
4. Stated that the person whom DPS records indicated was the resident of that house controlled the premises; and
5. Stated that the affiant suspected that that person knowingly or intentionally possessed cocaine or other controlled substances.

The facts purporting to support probable cause were that

---

**3.** To the contrary, the warrant states, "Herein fail not, but have you then and there this Warrant executed within three days, exclusive

of the day of its issuance and exclusive of the day of its execution with your return thereon, showing how you have executed the same."

1. The affiant had been a peace officer for seven years and two months and a member of the narcotics unit for three years and ten months and had gone to schools that taught "methods of investigating narcotics offenses, including the development of probable cause for the issuance of search warrants."

2. On June 24, 2010, investigators with his police department were involved in a big methamphetamine and cocaine bust, during the search "investigators also found a cell phone inside the residence," and while they were still searching the house, "the cell phone received numerous phone calls. As the phone rang, Investigators could see the incoming number listed on the telephone as '972–966–9086.' "

3. The affiant checked the number through "Accurint intelligence database," which returned the number to Marlin York with the address described in the affidavit and on his driver's license.

4. "An inquiry into [Marlin] York revealed that he ha[d] lived at the suspected location since January 2008."

5. On June 28, 2010, an unnamed fellow law enforcement investigator who was also conducting a drug-related investigation told the affiant that in February 2009, the unnamed law enforcement investigator had received information from an unstated source that Marlin York was "connected with individuals believed to be involved in the distribution of large amounts of illegal drugs."

6. A month later, on July 21, 2010, the affiant drove to the Feathering Drive address and saw a gray Dodge Durango registered to Marlin York parked in the driveway.

7. On July 23, 2010, the affiant and another investigator, Freeman, went to the suspected location and collected trash bags in the trash can "at the end of the driveway between the public sidewalk and the public street." They found a plastic bag with white powdery residue that field tested positive for cocaine, a single green leafy stem that field tested positive for marihuana, and mail in the name of Marlin York with the Feathering address.

8. On August 17, 2010, the affiant saw a male who could have been Marlin York standing in the Feathering driveway next to the Dodge Durango registered to Marlin York.

9. On August 20, 2010, the affiant went back to the Feathering address to collect trash and found

   1.) Two large plastic bags that contained a white powder that field tested positive for cocaine.

   2.) Multiple coffee filters that contained a white powder that field tested positive for cocaine.

   3.) Mail in the name of Marlin York, with an address of 12625 Feathering Drive, Frisco, Texas.

10. The affiant concluded that "the size of the plastic bags and coffee filters that contained cocaine residue are indicators that Marlin York is a large volume cocaine dealer."

11. Marlin York's criminal history showed a prior Texas arrest for "Manufacture/Deliver a Controlled Substance Penalty Group 1 (4–200 Grams)" and two DWI arrests. It also showed a prior Louisiana arrest for "Possession With Intent to Distribute Cocaine, Armed Robbery, and Contempt of Court." The affidavit is silent as to convictions.

The trial court granted the motion to suppress and explained his reasoning:

1. The trash-runs were separated too far in time (July 23 and August 20).

2. The trial court did not believe a single trash-run was nearly sufficient.

3. There was no indication that the mail in Marlin York's name was found in the same trash bag as the trash with "the white powder coffee filters, the plastic bags, and that's just simply not sufficient to tie it directly, especially given that this is a trash-run and it's not an eyewitness eyeballing what occurred."

4. There was no indication that "all other reasonable means were exhausted prior to defaulting to a search warrant and the [S]tate needs to take all reasonable measures short of a search warrant to gather evidence prior to defaulting to such. And that's unreasonable."

5. The trash-runs were too remote in time one from the other and "it's just too attenuated."

6. The magistrate "could have and should have made a requirement on the face of the warrant requiring that it be executed within a reasonable period of time and instead defaulted to what the legislature has required" because drugs are quickly used and quickly sold. "It disappears quickly." The trial court concluded that there was too much time between the trash-run and the search and seizure.

7. Additionally, the trial judge expressed the following concerns: "And touching on the August 17th observations, so what?" The police established that Marlin York either lived at that address or was visiting that address on that date. "It doesn't tie him to any sort of drugs, any sort of illegal activity." There was no recitation that the officers could not have employed other less-intrusive alternatives. No surveillance revealed that anyone observed any illegal activities. No recitation suggested any situation that made it unsafe for the officers to do anything "less intrusive than a search warrant."

I agree with the trial court. Although case law tells us that we look at what was contained within the four corners of the affidavit in a common-sense, not hyper-technical way, and admonishes us that rather than looking at what is missing from the affidavit or what should have been included in the affidavit, we must look to the four corners of the affidavit to determine if the magistrate could have inferred sufficient information to provide probable cause to support the warrant from the facts that were provided,[1] we should not attribute to the magistrate inferences that provide facts wholly missing from the affidavit.

If Marlin York was operating as a major drug dealer from the Feathering address, where in the affidavit is there any fact that supports that conclusion? A sixteen-month-old statement from an unnamed law enforcement investigator that he had received information from an unstated source that Marlin York was "connected with individuals believed to be involved in the distribution of large amounts of illegal drugs"? The fact that while unnamed officers were conducting a big drug bust, the cell phone of someone rang several times and someone saw Marlin York's telephone number as the source of one or more of the calls? We cannot tell, nor can we infer, whether a single call or multiple calls

1. *Rodriguez v. State*, 232 S.W.3d 55, 61 n. 25, 64 (Tex.Crim.App.2007).

came from his phone. He was seen at most one time at the Feathering address, although the Dodge vehicle registered to him may have been there twice.

What was the evidence of drug dealing, direct or inferential? A single stem of marihuana found in a trash can on the curb in front of the Feathering address a month before the warrant issued and three plastic bags and coffee filters with cocaine residue? What was the evidence that the trash came from the house at the Feathering address? Mail addressed to Marlin York at the Feathering address was found in a trash bag. Could the magistrate reasonably infer that the mail was in the same bag as the residue? Could the magistrate reasonably infer that all the trash bags came from the house at the Feathering address?

We are instructed that we should uphold warrants if at all possible because otherwise the police would act without warrants and then seek to justify their search afterward.[2] Is that really what we think of our law enforcement officers? I may be naïve, but I believe our peace officers want to get it right. And we do them no favors by providing no guidance. We have rules. The Fourth Amendment to our Constitution guarantees that we shall be secure in our "persons, houses, papers, and effects, against unreasonable searches and seizures, ... and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation ...."[3] Did someone bring the trash from the house or did someone bring the trash from another location and put it in the trashcan on the curb? We do not know, and neither does the magistrate or the affiant. Were people coming and going at the Feathering address? We do not know, and neither does the magistrate.

In *Flores v. State*, the Texas Court of Criminal Appeals upheld a similar warrant based on the "doctrine of chances."[4] Respectfully, search though I might, I have not been able to find any mention in the Constitution of the "doctrine of chances." Warrants must be based on probable cause. More significantly, the officers in *Flores* received an anonymous complaint of drug activity at an unnamed residence. "The concerned citizen also stated that he/she had observed a quantity of cocaine inside the residence in the past and that Child Protective Services had conducted an investigation (of) Flores regarding the use of marihuana in the presence of his children."[5] The citizen described the vehicles that would be at the house, and the police were able to corroborate the facts the informant had provided. The trash on the curb provided evidence confirming Flores's marihuana use.

But nowhere in the affidavit involving Marlin York is there any mention that anyone saw contraband in the house on Feathering. Nowhere is there any mention that anyone bought any contraband through York, from York, at the Feathering address, or near the Feathering address. Nowhere in the affidavit is there any mention of any unusual activity at or near the Feathering address.

I would hold, as did the trial court, that from the four corners of the affidavit, the magistrate could not have inferred probable cause that the police would find evidence of drug trafficking inside the house

**2.** *Ornelas v. United States*, 517 U.S. 690, 699, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911 (1996) (citing *Illinois v. Gates*, 462 U.S. 213, 236, 103 S.Ct. 2317, 2331, 76 L.Ed.2d 527 (1983)); *State v. Duarte*, 389 S.W.3d 349, 354 (Tex. Crim.App.2012).

**3.** U.S. Const. amend. IV.

**4.** 319 S.W.3d 697, 703 (Tex.Crim.App.2010).

**5.** *Id.* at 699.

at the Feathering address on the date the warrant was finally executed. Indeed, the officer waited from August 20, the day of the last trash run, until August 24 to execute the warrant. I would therefore uphold the trial court's suppression of the evidence against Marlin York.

Further, because the only evidence against Shavonia Tamika York (Marlin York's wife) was the evidence found as a result of the entry pursuant to the warrant that the trial court and I believe should not have been issued, the trial court also properly suppressed the evidence against her.

Because the majority does not uphold the trial court's decision in these two cases to suppress the evidence obtained pursuant to an unlawful warrant, I respectfully dissent.